UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CAPITAL YACHT CLUB, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-0357 (RMU) |
| | : | | |
| v. | : | | |
| | : | | |
| VESSEL AVIVA, Her Engines, Masts, | : | Document Nos.: | 59, 61 |
| Anchors, Cables, Chains, Rigging, Tackle, | : | | |
| Apparel, Furniture, Dinghy, and All | : | | |
| the Necessaries Therewith | : | | |
| Appertaining, *in rem*, | : | | |
| | : | | |
| LARRY KILSTRIP, *in personam*, | : | | |
| | : | | |
| VIVIAN KILSTRIP, *in personam*, | : | | |
| | : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

#### GRANTING THE DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

This matter comes before the court on the defendants' motion to dismiss or for summary judgment. Invoking the court's admiralty jurisdiction, the plaintiff, Capital Yacht Club ("CYC"), brought suit against a maritime vessel called the Aviva and its owners for failure to pay dockage and related fees in relation to the *in personam*[1] defendants' boat. On June 23, 2005, pursuant to a joint motion by the parties, the court ordered the release of the *in rem*[2] property Aviva from

---

[1] *In Personam* jurisdiction is defined as "[a] court's power to bring a person into its adjudicative process; jurisdiction over a defendant's personal rights, rather than merely over property interests." BLACK'S LAW DICTIONARY 870 (8th ed. 2004).

[2] *In Rem* jurisdiction is defined as "[a] court's power to adjudicate the rights to a given piece of property, including the power to seize and hold it." BLACK'S LAW DICTIONARY 869 (8th ed. 2004).

CYC's custody. Shortly thereafter, the defendants filed a motion to dismiss arguing that the court did not have subject-matter jurisdiction over this case. Because the court no longer has *in rem* custody of the Aviva and because the nature of the agreement between the plaintiff and defendant Larry Kilstrip does not invoke this court's admiralty jurisdiction, the court grants the defendants' motion to dismiss.

## II.   BACKGROUND

### A.   Factual Background

CYC is a non profit corporation which provides storage, dockage, fuel, and other necessaries to maritime vessels. Compl. ¶ 2. The *in rem* defendant, the Aviva, is a 1959 55-foot Chris Craft Cruiser wooden vessel with an attached dinghy. *Id.* ¶ 3. *In personam* defendant Vivian Kilstrip owns the vessel, and *in personam* defendant Larry Kilstrip (hereinafter referred to as "Kilstrip") is the Master of the vessel and responsible for procuring its necessaries. *Id.* ¶¶ 4-5.

In November 1993, Kilstrip entered into a docking agreement with CYC. *Id.* ¶ 5. The agreement provided that, in exchange for dockage and various other services, Kilstrip would pay CYC a $260 monthly fee. *Id.* ¶ 5. As a member of CYC, according to the plaintiff, Kilstrip was subject to its bylaws, which state that members who are delinquent in their dues will eventually lose their membership and their boats will be subject to certain fees. *Id.* ¶¶ 6-7. Kilstrip was late in his payments for December of 2002 and for January, February,[3] May, and June of 2003. *Id.* ¶ 8. After Kilstrip's fifth late payment, the plaintiff terminated Kilstrip's membership and began

---

[3]   The plaintiff writes "2002" in its complaint, but this would appear to be a typographical error as the sequence of months is for 2003.

charging Kilstrip's vessel CYC's standard dockage fee for transient vessels. *Id.* ¶ 10. The plaintiff alleges that it provided dockage, electrical supply and other services vital to the Aviva that constitute the provision of necessaries under maritime law. *Id.* ¶ 11.

### B.   Procedural History

The plaintiff filed its complaint on March 5, 2004, seeking immediate foreclosure of its lien on the Aviva. *Id.* ¶ 14(D). The plaintiff claims that it has a valid lien against the Aviva and its owner for the value of the necessaries, as well as a pendent contract claim against its Master for the same. *Id.* On March 8, 2004, the court issued an order for arrest of the vessel, and the United States Marshal Service executed the warrant shortly thereafter. The plaintiff then moved for the appointment of substitute custodian of the Aviva so as to prevent the United States Marshal Service from incurring prohibitive costs in maintaining the Aviva and so that CYC could assume responsibility for the vessel. Mot. for Appointment of Substitute Custodian ¶¶ 3-4. On March 8, 2004, the court granted the plaintiff's motion and ordered the defendant to post a bond to the court's finance office "sufficient to cover the *custodia legis* fees accumulated in this case (at $68.75 per day) up to April 5, 2005 (for a total of $26,812.50)." *Capital Yacht Club v. Vessel Aviva*, No. 04-0357, Mem. Op. (D.D.C. May 16, 2005) at 13. On June 7, 2005, the defendants tendered $26,812.50 to the court's finance office pursuant to the court's order. *Capital Yacht Club*, Notice (June 7, 2005).

On June 23, 2005, the parties filed a joint motion to release the Aviva from the custody of the Capital Yacht Club and into the custody of defendant Kilstrip. That same day, upon reviewing the parties' joint motion, the court ordered the release of the Aviva. Order (June 23, 2005). Both the parties' joint motion and the court's order indicate that the release of the Aviva

was "without substitution of security." *Id.* On July 20, 2005, the defendants moved to dismiss or for summary judgment. According to the defendants, the court is divested of subject matter jurisdiction under 28 U.S.C. § 1333 because the court no longer has *in rem* custody over the Aviva, and the court does not have admiralty jurisdiction over the remaining claims against the *in personam* defendants. The court now turns to that motion.

### III.   ANALYSIS

#### A.   Legal Standard for Motion to Dismiss

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court may dismiss a complaint for lack of subject-matter jurisdiction only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d

338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B.  The Court Grants the Defendants' Motion to Dismiss

The plaintiff brings this cause of action under federal admiralty jurisdiction. The plaintiff claims that it possesses a maritime lien that it can enforce *in rem*. 46 U.S.C. § 31342. A maritime lien would give this court jurisdiction in admiralty. 28 U.S.C. § 1333. The defendants argue that because the court no longer has *in rem* custody over the vessel, the court no longer has admiralty jurisdiction over this case. Defs.' Mot. at 2. The defendants also argue that the *in personam* claims against the remaining defendants are not maritime in nature. Defs.' Reply at 5. Because the court agrees with the defendants, it dismisses both the plaintiff's *in rem* and *in personam* claims.

#### 1.  *In Rem* Jurisdiction

##### a.  Legal Standard for *In Rem* Jurisdiction

An *in rem* action "is one in which the judgment of the court determines the title to

property and the rights of the parties, not merely as between themselves, but also as against all persons at any time dealing with them or with the property upon which the court had adjudicated." R.H. GRAVESON, CONFLICT OF LAWS 98 (7th ed. 1974). *In rem* actions brought in admiralty cases such as this are committed exclusively to the federal courts. *The Moses Taylor*, 71 U.S. (4 Wall) 411 (1866). The distinguishing feature of lawsuits brought *in rem* is that the subject of the suit, either a vessel or thing, is itself seized and impleaded as the defendant, and is judged and sentenced accordingly.

> It is this dominion of the suit in admiralty over the vessel or thing itself which gives to the title made under its decrees validity against all the world. By the common law process, whether of mesne attachment[4] or execution, property is reached only through a personal defendant, and then only to the extent of his title.

*Id.* at 427.

*In rem* jurisdiction requires that either the plaintiff or the court have actual or constructive control over the physical object at issue. *The Brig Ann*, 13 U.S. (9 Cranch) 289, 291 (1815). "Constructive possession connotes something less than physical seizure of the *res* by the court." *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 964 (4th Cir. 1999). To meet the demands of constructive possession, a replacement *res*[5] may be substituted for the vessel in the form of a bond. SUPP. R. ADM. E(5). Without either actual or constructive possession, however, the court cannot adjudicate the rights of the *res*. *R.M.S. Titanic, Inc*, 171 F.3d at 964.

---

[4] A mesne attachment is defined as "[a]n attachment that results in seizure and holding of property pending a resolution of the plaintiff's claim." BLACK'S LAW DICTIONARY 136 (8th ed. 2004).

[5] *Res* is defined as "[a]n object, interest, or status, as opposed to a person." BLACK'S LAW DICTIONARY 1332 (8th ed. 2004).

b.     **The Court Lacks *In Rem* Jurisdiction**

On June 23, 2005, the parties signed the Joint Motion for Release of the vessel Aviva. That document declared that defendant Kilstrip had until July 15, 2005 to remove the Aviva from CYC.  Joint Mot. for Release ("Joint Mot."). If he failed to do so by that date, the plaintiff would move for an interlocutory sale of the vessel. *Id.* The motion further stated that CYC was releasing the vessel from its custody "without substitution of security." *Id.* Pursuant to the joint agreement of the parties, the court issued an order indicating that the "Aviva [is] released from custody, without substitution of security." *Capital Yacht Club v. Vessel Aviva*, No. 04-0357, Order (D.D.C. June 23, 2005).

The defendants now argue that because the plaintiff consented to the release of the Aviva "without substitution of security," Joint Mot. at 1, the plaintiff "abandoned the seizure without a substitute *res*," thereby divesting the court of its jurisdiction. Defs.' Mot. at 6 (citing *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 88 (1992)). The plaintiff asserts that the $26,812.50 posted on June 7, 2005 to the court's finance office by the defendants serves as a bond for the purposes of SUPP. R. ADM. E(5), and therefore, that the court still retains admiralty jurisdiction. Pl.'s Opp'n at 2. The plaintiff's argument is unconvincing for three reasons.

First, the defendants tendered the $26,812.50 to comply with the court's May 16, 2005 Order, which plainly indicates that the monies are to be paid to "cover the *custodia legis* fees accumulated in this case," not to act as substitute security. Mem. Op. (May 18, 2005) at 13. Because the court directed the defendants to make this payment to cover expenses which had previously accumulated, not in exchange for the release of the Aviva, *see id.,* defendants' payment is not substitute security for the release of the Aviva. Second, the unambiguous

language of this court's June 23, 2005 Order indicates that the release would occur without substitution of security. Order (June 23, 2005).

Third, the parties intended the Aviva to be released without substitute security. In devining the parties' intent, "the court must adhere to the objective law of contracts, 'whereby the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress or mutual mistake.'" *Potomac Elec. Power Co. v. Mirant Corp.*, 251 F. Supp. 2d 144, 148 (D.D.C. 2003) (quoting *Marra v. Papandreou*, 59 F. Supp. 2d 65, 76 (D.D.C. 1999), *aff'd* 216 F.3d 1119 (D.C. Cir. 2000)).

The plaintiff argues that its intent was not to release the Aviva without substitution of security. Pl.'s Opp'n at 3. But, "[w]hen the language of a contract is 'clear and unambiguous on its face, a court will assume that the meaning ordinarily ascribed to those words reflects the intentions of the parties' and need not look to extrinsic evidence in interpreting it." *Lucas v. Army Corps of Eng'rs*, 789 F. Supp. 14, 16 (D.D.C. 1992) (quoting *NMR Corp. v. Hercules, Inc.*, 758 F.2d 676, 681 (D.C. Cir. 1985)). There is nothing ambiguous about the phrase "without substitution of security."

To summarize, jurisdiction remains only if a substitute *res* is provided. SUPP. R. ADM. E(5). The parties' agreement, and the court's subsequent order, make no mention of the $26,812.50 the defendants posted on June 7, 2005. Because the parties' joint motion and the subsequent order of this court unambiguously indicate that the *res* is released "without substitution of security," the plaintiff's release of the vessel divests this court of subject matter

8

jurisdiction.[6] *The Brig Ann*, 13 U.S. at 219.  Accordingly, the court grants the defendants' motion to dismiss the complaint with regard to the *in rem* action against the vessel Aviva.

### c.     The Plaintiff's Fraud Claim Lacks Merit

The plaintiff argues that if the "court is inclined to release the *in rem* claim entirely, it must consider that fraud or misrepresentation by defendants prohibits discharge of any lien against the vessel." Pl.'s Opp'n at 3.  The plaintiff, however, fails to refer to any evidence that would support this claim, stating simply its subjective belief that it was fraudulently induced into signing the joint motion.  *Id*.  "Courts of equity will not grant relief merely upon the ground of accident where the accident has arisen without fault of the other party, if it appears that it might have been avoided by inquiry or due diligence." *United States v. Ames*, 99 U.S. (9 Otto) 35, 47 (1878).

The plaintiff's attorney signed the joint motion of release, and this document clearly states that the vessel was to be released without substitution of security.  Joint Mot. at 1.  Contrary to the plaintiff's assertion, the defendants have no duty to inform the plaintiff's attorney of the legal consequences of the release.  *In re Complex Asbestos Litig.,* 232 Cal. App. 3d 572, 588 (Cal. Ct. App. 1991) (stating that "the courts have recognized repeatedly that attorneys owe

---

[6]     The release of the Aviva without substitution of security also constitutes legal abandonment.  *See Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 87 (1992) (stating that "[i]f a seizure be completely and explicitly abandoned, and the property restored by the voluntary act of the party who has made the seizure, all rights under it are gone") (quoting *The Brig Ann*, 13 U.S. (9 Cranch) 289, 290 (1815)).  The abandonment exception to *in rem* jurisdiction is "closely related to the traditional, theoretical concerns of jurisdiction: enforceability of judgments and fairness of notice to parties."  *Id.*, 506 U.S. at 87.  Without actual possession of the *res* by the court, the potential defendants may not be aware of the suit and any judgment against them may not be enforceable.  *Id.*

no duty of care to adversaries in litigation or to those with whom their clients deal at arm's length"). The plaintiff does not show the court any evidence suggesting that the defendants fraudulently misled the plaintiff into believing that the joint motion would not divest the court of *in rem* jurisdiction.

Had the document at issue been lengthy or had the damning language been buried in a footnote or encoded within the document, the plaintiff's fraud claim might have set sail. *See Stout v. Byrider,* 50 F. Supp. 2d 733, 740 (N.D. Ohio 1999) (holding that no fraud in the inducement occurred where "[t]he contract terms were not hidden in boilerplate language or otherwise disguised"). But, the joint motion is half a page in length and the first line clearly indicates that the parties "jointly request" that the court "release M/V Aviva from custody, without substitution of security." Joint Mot. at 1. Claiming fraud is not a safety valve for an otherwise meritless argument.[7]

### 2.   The Court Lacks *In Personam* Jurisdiction

A contract for wharfage[8] can either be enforced *in rem* against the vessel to which the wharfage was given or *in personam* against the vessel's owner. *Ex Parte Easton*, 95 U.S. (5 Otto) 68, 77 (1877). The plaintiff argues that the court has admiralty jurisdiction over the claims brought against the *in personam* defendants. Pl.'s Opp'n at 9 (stating that "actions in personam

---

[7]   The plaintiff claims that the court "must" consider fraud or misrepresentation. Pl.'s Opp'n. at 3 (citing *Oregon Prod. Credit Ass'n v. Oil Screw Sweat Pea*, 435 F. Supp. 454, 459 (D. Or. 1977)). In *Sweet Pea*, however, the intervening plaintiff's "unilateral mistake" caused them to undervalue the boat in creating the order for release, and the court concluded that "[the intervening plaintiff] cannot repudiate its consent to the release merely because the adverse consequences have now become apparent." *Id.*

[8]   Wharfage is defined as "[t]he fee paid for landing, loading, or unloading goods on a wharf. BLACK'S LAW DICTIONARY 1626 (8th ed. 2004).

arising out of maritime contracts may be brought in admiralty [in] federal district courts"). Thus, though the court rules that it does not have *in rem* jurisdiction in this case, the court must determine whether it has admiralty jurisdiction over the plaintiff's claims against the *in personam* defendants.

### a. Legal Standard for Admiralty Jurisdiction

Generally, federal courts have admiralty jurisdiction only when the subject-matter of the contract is "purely" or "wholly" maritime in nature. *See Rea v. The Eclipse*, 135 U.S. 599, 608 (1890); *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l, Ltd.*, 968 F.2d 196, 199 (2d Cir. 1992). "[W]harves, piers, or landing-places are wellnigh as essential to commerce as ships and vessels, and are abundantly sufficient to demonstrate that the contract for wharfage[9] is a maritime contract." *Ex Parte Easton*, 95 U.S. (5 Otto) 68, 75 (1877). As long as the wharfage contract is tied to a specific vessel, courts have held the contract is maritime in nature. *Royal Ins. Co. of Am. v. Pier 39 Ltd. P'ship*, 738 F.2d 1035, 1035 (9th Cir. 1984). It does not matter that the vessel in question is engaged in commerce, as wharfage contracts for "pleasure crafts engaged in noncommercial navigation on navigable waters" are nevertheless considered maritime in nature. *Goodman v. 1973 26 Foot Trojan Vessel*, 859 F.2d 71, 73 (8th Cir. 1988).

Historically, any contract not strictly maritime in nature was considered outside the realm of federal admiralty jurisdiction. *Rea v. The Eclipse*, 135 U.S. 599, 608 (1890). Currently, courts recognize two exceptions to the rule that mixed contracts "fall outside admiralty

---

[9]   The defendants signed a document entitled a "docking agreement." Compl. Exh. C. Dockage is defined as "a charge for the use of a dock." 341 MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1993). A dock is defined as "a place (as a wharf or platform) for the loading and unloading of materials." *Id.*

jurisdiction." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 109 (2d Cir. 1997). First, the court "can exercise admiralty jurisdiction over a 'mixed' contract if . . . the claim arises from a breach of maritime obligations [which are] severable from the non-maritime obligations of the contract." *Folksamerica Reinsurance Co. v. Clean Water of NY, Inc.*, 413 F.3d 307, 314 (2d Cir. 2005) (citing *Transatlantic Marine Claims Agency*, 109 F.3d at 109). Second, the court may "exercise admiralty jurisdiction where the non-maritime elements of a contract are 'merely incidental' to the maritime ones."[10] *Id.* Only if the agreement meets one of these two exceptions will the court have jurisdiction over the *in personam* claims against the defendants.

### b. The Court Lacks Admiralty Jurisdiction

The agreement between the plaintiff and Kilstrip covers wharfage of the defendants' vessel, Compl. Exh. C., and, therefore, is maritime in nature. *Ex Parte Easton*, 95 U.S. at 75. The agreement is not solely a maritime contract, however, because it also contains provisions concerning the board of directors' duties, clubhouse usage, parking, and several other provisions pertaining to the general operation of the plaintiff yacht club. *Atlantic Mutual Ins. Co.*, 968 F.2d at 199. For this reason, the court must assess whether the contract satisfies one of the "mixed

---

[10]  The Supreme Court recently criticized the "merely incidental" exception as it pertains to contracts covering both maritime and non maritime transportation. *Norfolk Southern Railway Co. v. Kirby,* 125 S. Ct. 385, 396 (2004) (stating that "it seems to us imprecise to describe the land carriage required by an intermodal transportation contract as 'incidental'; realistically, each leg of the journey is essential to accomplishing the contract's purpose"). Because the instant case does not involve a mixed land and sea carriage contract, however, the court will apply the merely incidental framework. Assuming that the Supreme Court's caution in *Kirby* likewise applied to this case, the court would assess "whether the principal objective of a contract is maritime commerce." *Id.* at 394. Because the contract here covers membership in the plaintiff yacht club (with wharfage constituting one portion of that membership fee), the principal objective of the contract here in dispute cannot be said to be maritime commerce .

contract" exceptions. *Transatlantic Marine Claims Agency, Inc.*, 109 F.3d at 109. As described below, the agreement fails to meet either of the mixed contract exceptions.

### i. The Non-Maritime Elements of the Contract are Not Severable

The court may invoke admiralty jurisdiction over a case which contains both maritime and non-maritime elements if "the claim arises from a breach of maritime obligations [which are] severable from the non-maritime obligations of the contract." *Folksamerica Reinsurance Co.*, 413 F.3d at 314. When both land and sea services fall under one bill of lading in a maritime contract, the contract is non-severable. *Berkshire Fashions, Inc. v. Carbo Constr. Corp.*, 954 F.2d 874, 880-881 (3d Cir. 1992); *Alaska. Barge & Transp., Inc. v. United States*, 373 F.2d 967, 972 (Ct. Cl. 1967). The central issue in this case concerns whether the transient dockage fee charged to defendant Kilstrip was proper, a determination which turns on whether CYC properly terminated defendant Kilstrip's membership contract. Because the membership fee covers both the wharfage of the Aviva as well as dues related to other services provided by the yacht club, the contract is not severable. *Berkshire Fashions,* 954 F.2d at 880-881 (holding that because the fees for services covered in the contract implicitly included land based services, the contact's maritime and non-maritime components were not severable).

### ii. The Non-Maritime Elements of the Contract are Not "Merely Incidental"

As stated above, the court may exercise admiralty jurisdiction when the non-maritime elements of a contract are "merely incidental" to the maritime ones. *Folksamerica Reinsurance Co.*, 413 F.3d at 314. In making this determination, "the court should consider 'whether an issue related to maritime interests has been raised' . . . bearing in mind that the 'fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce.'" *Sirius Ins. Co.*

*Ltd. v. Collins*, 16 F.3d 34, 36 (2d Cir. 1994) (quoting *Simon v. Intercontinental Transport B.V.*, 882 F.2d 1435, 1442 (9th Cir. 1989)).

The non-maritime elements of the contract are not merely incidental to the rest of the contract. Numerous provisions of the CYC Bylaws do not relate to maritime issues whatsoever, but simply identify how the club will operate and its members' obligations. The membership agreement is not limited to issues strictly maritime in nature such as wharfage but also contains provisions concerning the board of directors' duties, clubhouse usage, and parking. Compl. Ex. A.

Because neither exception to the presumption against maritime jurisdiction over mixed contracts applies, this court cannot exercise admiralty jurisdiction over the plaintiff's complaint. Therefore, the court must dismiss the *in personam* claims against the defendants.

## IV.   CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 19th day of January, 2006.

                                        RICARDO M. URBINA
                                        United States District Judge