**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CAPITAL YACHT CLUB, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-0357 (RMU) |
| | : | | |
| v. | : | | |
| | : | | |
| VESSEL AVIVA, Her Engines, Masts, | : | Document No.: | 69 |
| Anchors, Cables, Chains, Rigging, Tackle, | : | | |
| Apparel, Furniture, Dinghy, and All | : | | |
| the Necessaries Therewith | : | | |
| Appertaining, *in rem*, | : | | |
| | : | | |
| LARRY KILSTRIP, *in personam*, | : | | |
| | : | | |
| VIVIAN KILSTRIP, *in personam*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING THE PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT

**I. INTRODUCTION**

This matter comes before the court on the plaintiff's motion to alter or amend the judgment. Invoking the court's admiralty jurisdiction, the plaintiff, Capital Yacht Club ("CYC"), brought suit against a maritime vessel called the Aviva and its owners for failure to pay dockage and related fees in relation to the *in personam*[1] defendants' boat. On June 23, 2005, pursuant to a joint motion by the parties, the court ordered the release of the *in rem*[2] property Aviva from

---

[1]  *In personam* jurisdiction is defined as "[a] court's power to bring a person into its adjudicative process; jurisdiction over a defendant's personal rights, rather than merely over property interests." BLACK'S LAW DICTIONARY 870 (8th ed. 2004).

[2]  *In rem* jurisdiction is defined as "[a] court's power to adjudicate the rights to a given piece of property, including the power to seize and hold it." BLACK'S LAW DICTIONARY 869 (8th ed. 2004).

CYC's custody. Shortly thereafter, the defendants filed a motion to dismiss arguing that the court did not have subject-matter jurisdiction over this case.

On January 19, 2006, the court granted the defendants' motion to dismiss, ruling that because the plaintiff explicitly released the defendant vessel from *in rem* custody without substitution of security, the court no longer had subject-mater jurisdiction to entertain this case. The plaintiff now moves the court to reconsider that decision, and asserts a new argument not raised by the plaintiff in its opposition to the defendants' motion to dismiss. These new arguments convince the court to alter its previous ruling and permit the parties to file new dispositive motions.[3]

## II.  BACKGROUND

### A.  Factual Background

CYC is a non-profit corporation which provides storage, dockage, fuel, and other necessaries to maritime vessels. Compl. ¶ 2. The *in rem* defendant, the Aviva, is a 1959 55-foot Chris Craft Cruiser wooden vessel with an attached dinghy. *Id.* ¶ 3. *In personam* defendant Vivian Kilstrip owns the vessel, and *in personam* defendant Larry Kilstrip (hereinafter referred to as "Kilstrip") is the Master of the vessel and responsible for procuring its necessaries. *Id.* ¶¶ 4-5.

In November 1993, Kilstrip entered into a docking agreement with CYC. *Id.* ¶ 5. The agreement provided that, in exchange for dockage and various other services, Kilstrip would pay CYC a $260 monthly fee. *Id.* ¶ 5. As a member of CYC, according to the plaintiff, Kilstrip was

---

[3]  The parties' new dispositive motions must include thorough legal analyses of their positions with relevant case law and properly bluebooked case citations.

subject to its bylaws, which state that members who are delinquent in their dues will eventually lose their membership and their boats will be subject to certain fees. *Id.* ¶¶ 6-7. Kilstrip was late in his payments for December 2002 and for January, February,[4] May, and June 2003. *Id.* ¶ 8. After Kilstrip's fifth late payment, the plaintiff terminated Kilstrip's membership and began charging Kilstrip's vessel CYC's standard dockage fee for transient vessels. *Id.* ¶ 10. The plaintiff alleges that it provided dockage, electrical supply and other services vital to the Aviva that constitute the provision of necessaries under maritime law. *Id.* ¶ 11.

### B. Procedural History

The plaintiff filed its complaint on March 5, 2004, seeking immediate foreclosure of its lien on the Aviva. *Id.* ¶ 14(D). The plaintiff claims that it has a valid lien against the Aviva and its owner for the value of the necessaries, as well as a pendent contract claim against its Master for the same. *Id.* The court issued an order for arrest of the vessel on March 8, 2004, and the United States Marshal Service executed the warrant shortly thereafter. The plaintiff then moved for the appointment of substitute custodian of the Aviva so as to prevent the United States Marshal Service from incurring prohibitive costs in maintaining the Aviva and so that CYC could assume responsibility for the vessel. Mot. for Appointment of Substitute Custodian ¶¶ 3-4. On March 8, 2004, the court granted the plaintiff's motion and ordered the defendant to post a bond to the court's finance office "sufficient to cover the *custodia legis* fees accumulated in this case (at $68.75 per day) up to April 5, 2005 (for a total of $26,812.50)." *Capital Yacht Club v. Vessel Aviva*, No. 04-0357, Mem. Op. (D.D.C. May 16, 2005) at 13. The defendants tendered

---

[4] The plaintiff writes "2002" in its complaint, but this would appear to be a typographical error as the sequence of months is for 2003.

$26,812.50 to the court's finance office pursuant to the court's order. *Capital Yacht Club*, Notice (June 7, 2005).

On June 23, 2005, the parties filed a joint motion to release the Aviva from the custody of the Capital Yacht Club and into the custody of defendant Kilstrip. That same day, upon reviewing the parties' joint motion, the court ordered the release of the Aviva. Order (June 23, 2005). Both the parties' joint motion and the court's order indicate that the release of the Aviva was "without substitution of security." *Id.* On July 20, 2005, the defendants moved to dismiss, and on January 19, 2006, the court granted that request. The court ruled, in essence, that the plaintiff's agreement to release the defendant vessel without substitution of security constituted legal abandonment, which divested the court of subject-matter jurisdiction. Mem. Op. (Jan. 19, 2006)("Mem. Op.") at 8-9. The plaintiff now moves the court to alter or amend that judgment.[5] The court turns to that motion.

---

5   The plaintiff actually moves the court to reconsider under FED. R. CIV. P. 52(b). Pl.'s Mot. at 1. The plaintiff's invocation of Rule 52(b) is improper, as Rule 52 covers amendments to factual findings. FED. R. CIV. P. 52(b). Perhaps recognizing this error, the plaintiff, in its reply brief, recharacterizes its motion as a Rule 59 motion to alter or amend judgment. Unfortunately, this legal oversight is emblematic of the quality of both counsels' legal submissions throughout this litigation. The court gratuitously considers the plaintiff's motion as a Rule 59(e) motion. The court, however, is growing tired of counsels' sloppy submissions. It is almost as if the parties' counsel have together devised an entirely new legal writing style, complete with a rule favoring citation to bad law in place of citation to good law, and a wholesale rejection of the Bluebook in favor of their own not-so-uniform system of citation. Although the court finds this parallel universe of legal advocacy entertaining, it now longs for the traditional methods of representation: citations to good law and utilization of the ubiquitous Bluebook. *See e.g., Bradshaw v. Unity Marine Corp., Inc.,* 147 F. Supp. 2d 668, 672 (S.D. Tex. 2001) (stating, in an admiralty case, that "[a]fter this remarkably long walk on a short legal pier, having received no useful guidance whatever from either party . . . the court has endeavored . . . to resolve what it perceived to be the legal issue presented").

## II.   ANALYSIS

### A.   Legal Standard for Rule 59(e) Motion

Federal Rule of Civil Procedure 59(e) provides that a motion to alter or amend a judgment must be filed within 10 days of the entry of the judgment at issue. FED. R. CIV. P. 59(e); *see also Mashpee Wamponoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1098 (D.C. Cir. 2003) (stating that a Rule 59(e) motion "must be filed within 10 days of the challenged order, not including weekends, certain specified national holidays (including Christmas Day and New Year's Day), or any other day appointed as a holiday by the President"). While the court has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration and amendment of a previous order is an unusual measure. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (*per curiam*); *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999). Rule 59(e) motions "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice." *Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone*, 76 F.3d at 1208). Moreover, "[a] Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995), or a vehicle for presenting theories or arguments that could have been advanced earlier. *Kattan v. Dist. of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993); *W.C. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1, 3 (D.D.C. 1997).

### B.    The Court Grants the Plaintiff's Motion to Alter or Amend the Judgment

In its January 19, 2006 Memorandum Opinion, the court ruled that the parties' agreement to release the defendant vessel divested this court of subject-matter jurisdiction for the principal reason that the parties expressly disavowed any substitute security. Mem. Op. at 7. The court's decision was predicated on the legal requirement that either the plaintiff or the court have actual or constructive control over the physical object at issue. *Id.* (citing *The Brig Ann*, 13 U.S. (9 Cranch) 289, 291 (1815) and SUPP. R. ADM. E(5)). The court ruled that the plaintiff's agreement to release the defendant vessel without substitution of security constituted legal abandonment. Mem. Op. (Jan. 19, 2006) at 9 n.6 (quoting *Republic Nat'l Bank of Miami*, 506 U.S. 80, 87 (1992), for the proposition that "[i]f a seizure be completely and explicitly abandoned, and the property restored by the voluntary act of the party who has made the seizure, all rights under it are gone"). Moreover, the court based its conclusion of legal abandonment on the plain text of the parties' agreement, stating that the court would ascribe the ordinary meaning of the parties' words as the intentions of the parties and that the court "need not look to extrinsic evidence in interpreting it." *Id.* at 8.

Lurking in the shadow of the court's abandonment ruling, however, is the legal import of defendant Larry Kilstrip's bond payment, made pursuant to a May 16, 2005 order of this court. The court directed defendant Kilstrip to "post[] a bond sufficient to cover the *custodia legis* fees accumulated in this case." Order (May 16, 2005). In its January 19, 2005 ruling, the court indicated that this bond did not constitute a substitution of security because the court explicitly instructed that the bond would cover "the *custodia legis* fees accumulated in this case." Mem. Op. at 7.

Nevertheless, the plaintiff now argues that because the court ordered the posted bond "*sufficient* to cover the custodia legis fees," it "did not mandate that the bond be applied solely for those fees." Pl.'s Mot. at 8. For this reason, the plaintiff argues that its decision to release the defendant vessel without "additional" substitution of security cannot be construed as abandonment.[6] Pl.'s Mot. at 8.

Underlying the court's decision that the plaintiff's actions constituted abandonment was its legal determination (still valid) that the bond could not count as substitute security because that bond acted specifically to "cover the *custodia legis* fees accumulated in this case, not to act as substitute security." Mem. Op. (Jan. 19, 2006) at 7 (quoting Mem. Op. (May 18, 2005) at 13). Although the plaintiff's reading of the court ordered bond is tenuous at best, the court recognizes that the plaintiff's subjective understanding of the nature of the bond is critical to a finding of legal abandonment. *Chicago and N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 314 (1981) (indicating that abandonment requires the subjective "intention" of the party to permanently or indefinitely disavow that which is abandoned).

Although the court is not prepared to rule on whether the plaintiff's reading of this court's bond order is sincere or reasonable, the plaintiff's suggestion is sufficient for this court to reconsider its legal determination of abandonment, and allow the parties to relitigate this issue, but this issue only. *Emphagran S.A. v. F. Hoffman-Larouche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir.

---

[6] This argument constitutes an extremely strained, and incorrect, interpretation of the court's bond order. As the court previously ruled, the purpose of the bond was to cover the accumulated *custodia legis* fees, "not to act as substitute security." Mem. Op. (Jan. 19, 2006) at 7. Indeed, the plaintiff's position prior to this court's January 19, 2006 decision is inconsistent with the position it now advocates. *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss at 4 n.1 (stating that the court ordered "bond was to cover custodia legis and related fees but not legal expenses") (internal quotations omitted).

2003) (indicating that dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

## IV.   CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion to alter or amend the judgment. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 27th day of September, 2006.

RICARDO M. URBINA<br>
United States District Judge